The first case is United States v. Carey, and I note that some of the material, which is the subject of the case, involves a confidential affidavit or declaration. I see counsel nodding. I hope everybody is aware that as things stand, we are being streamed live to the four corners of the earth, and I'm wondering whether that is going to be a problem. We can make arrangements or adjustments if that is a problem, but perhaps counsel wishes to address that. We won't start the clock until... Canute Johnson for Defendant Appellant Michael Carey. I see no problem. I'm not going to reference anything directly from the sealed portion of the record. And the United States? Okay. If we get into anything like that, remember, it is in real time, it is being streamed live, and if you have to allude to something that you folks know a lot better than we do as to when something is sensitive, just put a stop to it, and we can make adjustments if necessary. What I would do, just to let you know, is to then put the case to the end of the calendar, and eventually everybody in the courtroom will clear and it would stop the streaming. But anyway, that's an available option. Other than that, we're calling the first case, United States v. Carey. Counsel? Thank you again, Your Honor. And once again, Canute Johnson for Defendant Appellant Michael Carey. Your Honor, this is a case where we have found virtually no precedent for where the government on a Title III wiretap stumbles on to people they weren't aware of in a crime they weren't aware of, and then continues to record. Isn't this just a generic plain sight or plain hearing case? I'm not sure I follow that. Plain hearing case, Your Honor? Well, it's sort of the listening rather than seeing, but the doctrine is plain sight, but it doesn't involve vision, it involves hearing. Right. I understand what Your Honor is getting at. The government did say that. The government alluded to Fourth Amendment law and said that, well, if you were properly in a place and you saw evidence of a crime, you can certainly seize that. That is true under the Fourth Amendment. That's plain sight. Right. That's plain sight, and I understand now what you mean by plain hearing. That does not apply in this case. This is a Title III case, which is, A, more strict, but also taking that argument and saying, well, it's just a plain sight case. In this case, what happened wasn't just that they heard something and then they tried to introduce that statement at trial. They heard, they kept listening, they kept listening, they followed up with that, and they made arrests and found evidence. That would be like taking a plain sight case and saying, well, if you see evidence of a crime, you then have a general warrant to search whatever you want, wherever you want. You're saying two things, and that's sending me in two different directions, and I just want to make sure that we don't lose track. One thing you said is this is not Fourth Amendment, this is Title III, and it's more stringent. So you haven't followed up on that part of the argument. You are following up on the part by saying, but even then, it is, you know, it's not plain sight. Right. So I don't want to lose track. Are you arguing that, in fact, there's a different standard that applies, that plain sight doesn't apply to Title III? Well, I don't think it applies to Title III. Title III is very strict. Congress was very clear that we're very concerned about the confidentiality of communications, of discussions among people, not for phones or objects, but for people. And so Congress set up a very specific process that's so specific that under Giordano, the Supreme Court said that if the proper... and the target of the cell phone loses it, you know, people lose cell phones, and it gets picked up by somebody else who then has a conversation on that cell phone, and the government overhears it, and they're saying, as it happens, we're plotting to, you know, kill somebody, you know, some crime. Are you saying the government then cannot use that evidence? I am... If the government... Under Title III, I'm a little at a loss for that. Yes, we are, because under Title III, to listen into the conversations, there's a process the government has to follow. There is a... It did follow the process. It got a warrant to listen in on this phone on the assumption that this phone is going to be used by X. Now, under my hypothetical, which is not that different from your case, X loses the phone. Well, not ignore it, but to then follow up, and that's what the minimization... do next in terms of whether they continue with the warrant or anything else. I'm saying, can they use that, you know, that conversation? They listen in thinking the phone is still in the possession of the target, and they hear the conversation. Can they or can they not use it under your view? Perhaps the initial statement they could. That might be like... Well, perhaps it doesn't help me much. You know, I'm asking a question. It's either yes or no. Okay. Is there some reason that they should not be able to use it? Yes, because Title III requires a specific procedure, and it's not just that you get to listen into this particular phone and whatever you hear on it, if it's related to a crime, you can then use in the future. That's not the system Congress set up, and virtually all the cases cited by the government and the defense where it was someone different or someone not listed on the Title III affidavit that they heard, it was the same scheme, the same conspiracy. In this case, it's a completely separate crime, and there's... I'm not buying it. If you're saying, under my hypothetical, they pick up the phone, they listen in, they hear somebody else talking, unbeknownst to them, the phone has been lost, it's now being used with somebody else, and they don't know it's somebody else, if you're telling me that they can't use that, I'm just not following. Do you have a case that supports that? I don't get it. In this case, they knew it was. No, I understand. This is this case. I'm talking about my case. It's a hypothetical case where they think it's still the first person. Yeah. If they think it's still the first person, that's just a mistake, and in fact, I think that the... You're treading water. I want a yes or a no. Yes or no, if they... Yeah, can they use it? No. Title III is very strict. Okay, so even if they don't know that it's somebody else, they listen in, and then finally, by the end of the conversation, they realize it must be somebody else, they can't use that information. That's your position? That is my position, and I think... Counsel, could I interject? Yes. On this point, because I share the same concern that is implicit, I guess, in Judge Kaczynski's questions. Let me try to frame a question along those lines to see if it sheds any light. Let's say the government gets a wiretap following all the procedures that are necessary for strict compliance, and they start to listen to a cell phone, and the speaker says right at the outset, we're going to kill victim X tomorrow at 1 o'clock at the train station, okay? And then later in the conversation, they hear something else said, that they realize, whoa, this is a different guy than the person that thought we were tapping. And they immediately cease. They decide to stop listening. But then there is a shooting in the train station. Is the government not allowed to use that information that they first heard? Well, that they first heard, but I disagree with Judge Kaczynski that there's no distinction between what you first heard and what follows up once you know, as the government in this case knew... I said nothing about it. The question I keep asking is the same question Judge Gould asked you. Can they use that initial conversation? I mean, you know, you keep resisting giving the answer, but answer Judge Gould now. What is your answer to Judge Gould? The initial statement is different than the subsequent. We didn't ask you about the subsequent. We asked you about the initial statement. I keep asking about it. Judge Gould has asked you about it. And I'd like an answer to that. I think the initial statement is admissible. But the subsequent one, when you know... That was like pulling teeth to get it out of you. So if it is admissible, if the part of the conversation that was had when the government does not know it is a different part is admissible, which portion of what's at play here falls into that category? The government didn't realize for quite some time that they were listening to different parties. Isn't that right? Well, it's unclear when they knew. Well, you could have clarified. You could have asked for findings on that. Did you, you know, what portion? I mean, you need to point out what part of the conversation you think should be excluded. What part of the conversation did they have that they listened to after they knew that it was a different party? That was the government's burden to prove the admissibility of the evidence. No, they had a warrant. They had a warrant. They had a warrant. And if you think some parts of it are excludable because they should have hung up the phone, they should not have listened in after they realized it was a different party, you need to point out what portion of the conversation that is. Have you done that? The trial counsel did not establish that in front of the district court. Well, that's too late now, isn't it? Can I interject here? I think the rule we're playing with in an area that's a bit uncertain is that it's a variation on plain view, and that is they start the government has a legitimate wiretap. They listen to something that turns out to be unrelated to the purpose for which they got the wiretap. When they first hear it, they're totally unaware that it's unrelated. But then pretty soon they realize, or should realize, that they're listening in on things for which they're not authorized to have the wiretap. And it seems to me that as soon as they know or objectively should know that this is outside the scope of the authorized wiretap, they can't use it. I think they can use the stuff at the beginning when they didn't know. What I'm asking is if that's the rule that we come up with, what happened at trial, or in the trial court, I should say, and is what happened something that would foreclose a remand so that the district judge could then apply this rule, if this turns out to be the rule that we think is the right one? If that's the rule, and I think that is the right one, then the remand would be for the district court to establish what evidence came after the government knew, and the government below and trial counsel below did not establish when that occurred. We know it happened at some point. And whose burden was it? I'm hearing a little bit of, well, maybe since you guys didn't put it in front of the judge and make the judge decide on that basis, your chance is gone. But maybe it wasn't your burden to do it. Maybe it was the government's burden to do it. Or maybe we should, as it were, not have a sneak attack on everybody. This is not, as we know, the rule here at the moment is a little unclear. If we make the rule clear, maybe everybody should get a chance to apply it. Well, I would hope that that would be true. But the other part of it is that there was a lot of evidence. Wait a minute. You didn't answer the question. You didn't answer the question. About what? I'm trying to answer the question about the remand and whether there should be a remand. Well, I think the question Judge Fletcher asked or what I heard is, is what you did in the district court preclude a remand? Absolutely. Did you have a chance to do that and not do it? No, absolutely not. Why not? The trial counsel moved to suppress all the evidence from the wiretap. The government then responded, and it is the government that had the information about when it specifically knew what specific conversations, what specific evidence would have come to light after they knew they were listening to a conversation they shouldn't have. The defense had none of that. And remember that a lot of this is sealed. Well, but you've already admitted that some of the stuff that you asked to be suppressed should not have been suppressed because it was admissible. The stuff they listened to before they knew it was a different party was not suppressible. Why wasn't it up to the defendant to say we need a finding, we need a showing as to when the government kept listening after they knew that this was a different party? That would require the defense to put government witnesses on the stand to establish through them exactly what they knew and when they knew it. Did you ask for that finding from the district court? The trial counsel did not ask for that finding, was clearly not aware of a rule which doesn't exist about how to handle cases like this, and Mr. Carey should not be prejudiced. Why isn't that just like any other rule where you have to make an objection and you have to make the right objection below, and if you guess wrong, then that's an important lesson for people in future cases. Well, he did object. He objected to too much. He objected to too much. He objected to stuff that obviously was, you know, you've admitted is not suppressible. What was not suppressible could have been completely irrelevant to any further evidence in the case. We don't know because the government hasn't told us that. And my point that I was answering before is that so much of this case is under seal. The government, there's a ton the government did not give the defense in discovery, and it's the government that bears the burden of it proving it's admissible. And the defense objected, and for the court to say that the defense should have known exactly what statements were made that were admissible. Certainly not. But the defendant can object to the portion of the evidence that the government obtained after it knew it was a different party. And, you know, if the government then has to come up with evidence as to what that is, that becomes a government's burden. But you never ask the district court to make that determination. You never ask for that finding. The trial counsel objected to all the evidence, and that once having done that, it's my belief the government has the burden of proving, if that was the rule, if Mr. Carey had been before the district court and everyone knew that the rule is, everything that comes after the point when the government knew that it. . . What does it say that you have to know the rule ahead of time? Why isn't it up to counsel to figure out what the law is? And clearly you can't object to stuff that the government hears when it believes it is listening to a lawful wiretap. If it reasonably believes it is listening to a lawful wiretap, you have no business objecting to that. That's clearly admissible. You have to narrow your objection to the parts of the evidence you think, in fact, is inadmissible. Well, Your Honor, putting a defendant in an impossible position. . . Not impossible. When they don't have the evidence. It's the government that has the evidence. The defense cannot be expected to call Agent Meltzer, who's not going to sit down with the defense before a hearing and say, this is what I knew when I knew it. So let's say we had a remand. How would you be better off? You still can't call Agent Meltzer. You can't sit down with him. Right. Well, the government should have to prove what they knew and when they knew it. Why would that be the government's burden? I mean, let's say we do a remand. You now know what the rule is. But why isn't it still your burden to prove what is inadmissible? Well, I think using our hypothetical, if we have proved that they have collected evidence that they know is illegal to collect, it would be the government's burden to prove what evidence that they collected that was, in fact, legal. And that's why I'm saying, Your Honor. As far as I know, there's no evidence on this record that they listened to the conversation past the point where they realized they were listening to the wrong party. They made the arrest the same day they heard that there was going to be a pickup. Right? And I'm aware of no evidence on the record that says that that was even a day past where they realized it was a different party. Agent Meltzer admits that at a certain point, they absolutely knew that it was not related to the conspiracy they were investigating and this was not a person that they had a wiretap authorization for. So that's your evidence? That's the evidence that's before this Court. Why isn't that? Did you ask them when? I don't know. Trial counsel asked them when, but it certainly didn't come up at the hearing, not on the record of the hearing that we've seen. Okay. Why don't we hear from the government? May it please the Court. Peter Koff of the United States. The District Court correctly denied the suppression motion. The FBI was investigating a particular organization. They obtained a wiretap that established probable cause and necessity in relation to that organization. They were intercepting a phone that they were lawfully authorized to be intercepting. And as the District Court found, excerpts of record page 21, they reasonably thought that the drug activity they were listening to might still be related to that organization. But at some point they no longer reasonably think that. Do you agree? They do not think that way after the seizures. So you're contending that the evidence shows that the government never knew during the entire time they were listening that they were listening to an unrelated bunch of people? That's what Agent Melser's declaration establishes. It seems to me I just heard exactly the opposite from your opposing counsel. Is he misrepresenting the state of the record? I believe that's a misstatement. That's correct. What happened is Agent Melser stated in his declaration at some point after the call started being intercepted, and his declaration is at page 98 and 99 of the excerpts of records, at some point after the call started being intercepted, they realized it was not Mr. Escamilla Estrada on the phone. So what page of the declaration? 98 and 99 of the excerpts of records. Okay, I have it in front of me. Can you direct me to where? Do you have it? Yes, right. It's paragraph 3, about midway through. Johnson, do you have it? Yes. No, no, I just want to make sure you have it. Yes, I do. Okay, so we're all looking at the same page. Yes. Okay, go ahead. He acknowledges it. What paragraph? Paragraph 3. Okay. Within the time frame in which they were intercepting calls. That's the second sentence there, okay? After an amount of time that I do not recall exactly, we concluded that the person using T-14 was not Ignacio Escamilla Estrada. We also did not know the identities of the persons calling T-14. However, because I knew Escamilla had used T-14 shortly before, and because almost all of the calls over T-14 were, in my experience, obviously drug and drug proceed related, and still consistent with the type of activity that we were investigating, I thought the callers and calls might still be affiliated with our known targets or part of the criminal activity I was investigating. Now, might is sort of a weasel word. I mean, there might be invisible people visiting this planet. Might. True. So might doesn't tell me very much. The district court found that this belief was true. If the test is knew or should have known that this was not someone as to whom the wiretap was authorized, for him to say, well, it might have been, doesn't save you. Well, I still think you have the circumstances as well that go into whether or not this is a reasonable belief. And as the district court found, it was a reasonable belief. But the district judge, I think, did not have in mind the test that we seem to be moving toward, which is to say as soon as the government knows or should know that this is not part of the authorized wiretap, the government can't listen anymore. I don't think the district court applied that test. That's correct. The district court did not apply that test. But that's because this case was not, this issue was not framed in terms of an execution of the order. It was framed in terms of a necessity. But when you tell me what the district court found, it doesn't help me very much if the district court isn't applying the test that I think is the relevant test. Fair enough. But I still think under the circumstances, if you look at whether or not this belief by Agent Melser was reasonable, it certainly was reasonable. You have the fact that Mr. Escamillo-Estrada was on the phone just shortly before. The phone was in contact with the same organization. There's pen trap data that's in the wiretap affidavit that establishes that. You know, I would feel more comfortable if we could remand to the district court, district court apply the test, you make the argument, and the district court agrees with you. That's the end of it. That might be appropriate. And we certainly have no objection if you feel that's the appropriate way to go. So the problem I have with that is that it remands on an issue separate from the motion, the issue that was raised in the motion to suppress. This is now an issue about the execution of the warrant and whether or not they properly complied with the warrant or the order, the Title III order. The issue that was raised below was whether or not they established necessity for the order and whether or not they needed to go back and supplement that showing of necessity once they started to intercept unknown persons. And that's clearly contrary to law. So if you're remanding, you're remanding on a separate issue from what has been raised and litigated in the district court. You know, if it's waived and not waived, there's actually kind of a tricky question. We sometimes say, well, once you make the claim, and here the claim might be the evidence has to be suppressed, you don't waive arguments, you waive a claim, and if you've made the claim and all of a sudden there's a new argument that shows up, I'm not sure it's waived. It's a tricky question, and sometimes I have to say that we're not entirely consistent in applying our waiver rules. I agree. There is some vagaries there. In this case, I think, though, I mean, I don't think the rule can be that if you do a motion to suppress, you've preserved every suppression claim that relates to a wiretap. They can't possibly be. How about every suppression argument that relates to the suppression claim? I would say still the same thing. I mean, you can't preserve every suppression argument. It can't be that if you move to suppress for necessity below, you suddenly get to argue lack of probable cause or lack of minimization or some other grounds to suppress. It depends on the panel. Perhaps. Let me focus on something else. You were rather quick to agree with Judge Fletcher when he said that when Agent Meltzer said, I thought it was, it might be, what is the word here? I thought the calls might still be affiliated with unknown targets. And I think Judge Fletcher, I heard Judge Fletcher suggest that that is not the same as saying neither should have known. But, of course, it's the flip side. And so the question I have for you, and you were very quick to agree with him or at least not argue against it. I just wanted to, I don't want to suggest an answer to you, but I just wanted to like to know the government's position on this. If an agent thinks this might be somebody else, does he then know, is it a situation where he knows or should have known it's not somebody else? I'm sorry, if he thinks it might still be somebody affiliated with the original target, does he then know that it's not somebody affiliated with the target? No, I don't believe that's the case. So you don't agree with that suggestion in Judge Fletcher's statement. I just want to make sure I understand. The extent I agree with his statement is that might is not definitive. He did not say, I knew it was the same target. The test is, does he know? I mean, the issue is, does he know or should he have known that this is not the target? And if he says it might still be somebody associated with the target, I have some doubts. Correct. And he outlined the reasons why he thought it might still be related to his targets. So it's possible to think thinking it might still be the target is not knowing it's not the target. Correct. Those are two different things. Is it an objective or a subjective test? That is to say, if he has an unreasonable view of what's in front of him, is that enough? Or is it an objective test as to whether he should have known? I believe it would be an objective test. So for him to say might, that's at least saying that was my subjective point of view, and it might or might not have been a reasonable point of view. Well, certainly it was his subjective point of view, but I think he also outlined the reasons why he had that view. I understand that. And it may well be that the government can satisfy the test so that it's not a situation where he knew or should have known. At this point, I'm not sure I know enough to decide whether or not the government satisfies the test. But should you know? To determine that, we'd have to look at the affidavit. We'd have to actually look at the transcript, right? The transcript of the wiretap application. Yeah, so what's he hearing? You mean what's being intercepted, the calls of that nature? Sure, sure, sure. Did the district judge do that, or did the district judge rely on just Agent Melser's? He relied on Agent Melser's declaration. And to clarify one point, by local rule, once we submitted that declaration, the defense was entitled to cross-examine him and question him if they wanted to. They chose not to. Did they have a transcript of the wiretap? They had the recordings and the calls as well, yes. They did? Whether or not, I don't believe they had the calls from the original underlying wiretap, the Heredia Escamilla Organization wiretap. They did not have those calls because before March 10, those calls did not pertain. Did they have the calls involving? Mr. Carey? Him and his organization. Yes, they had those. So when Agent Melser says might have still been the right, they could have cited the transcript and said, well, it's unreasonable for you to have thought it might still be associated because here's what was said. Yes. I mean, they had the tools to do that. I'm not sure they could have. They had the tools for my time's up, so if I could just answer that. Did anybody ask for an evidentiary hearing on this? They did ask for an evidentiary hearing in terms of the Franks hearing. I understand that, but that's a different question. Did they ask for an evidentiary hearing on the question of when it became unreasonable for them to, for the government to believe it was still the same party? No, Mr. Carey's attorney argued that at some point it became unreasonable and it was uncommon upon us to establish where in the sequence of events all of these things happened, but he did not request an evidentiary hearing on that point. But he did make the argument? He did, but, again, this was all in terms of a necessity argument. That's what everybody understood it to be, not in terms of now we're talking about the execution of the warrant and whether it was properly complied with. So unless the Court has any further questions. Okay. Thank you. Thank you. We've taken up more than all of your time, but if you'd like a minute for rebuttal, you may take it. And I can be very quick, Your Honor. That's page 19 of the transcript where trial counsel argues that. I'm sorry, page 19 of the excerpt of the record? No. I'll give you the exact number of the excerpt of the record. I like to look at these things when you talk about them. Thank you. Transcript of what? Of the motion hearing itself. Let me circle back to that, and I can very quickly just say page 98 of the excerpt, which is the declaration. Yes, I have that. Yeah, Agent Meltzer. Agent Meltzer says from March 10th through the 17th. Where are you reading from? Paragraph 3, starting in the second line, they intercepted, or second sentence, excuse me. March 10th to the 17th, they intercepted drug-related calls. And within that time frame, after an amount of time that I do not recall exactly, we concluded that the person using T14 was not Ignacio, the person named there. Which means that we don't know. It could have been March 10th. Well, but you have the transcripts. If you think it was unreasonable, you could have brought that before the district court and said, look, they heard these things on March 9th or March 11th, and at that point it was unreasonable for him to think that this was from the same party because look what was said. I mean, you could have presented that evidence to the district court and asked for a finding, right? Well, a trial counsel did argue that after every call it became more and more unreasonable. You're making an argument now that we don't know. But the reason we don't know is he didn't present evidence on the point. He had evidence. It's not like they had all the evidence, as you argued earlier, and there's nothing your predecessor counsel could have done. Predecessor counsel could have said, well, he doesn't, the government doesn't tell us, and here's what we tell you. We show you from the transcript what was actually said, and at that point it became unreasonable. The district court might have brought it or not. I think co-counsel wants to hand you a blue slip. Page 42 of the excerpts of record, John. And that is, what is that? That is the transcript of the hearing on the motion to suppress in front of Judge Hayes. Okay. I got it. 42, what line? Line 19. Okay. And it's there where, as Mr. Coe pointed out, trial counsel argued with every call it became less and less reasonable. I'm sorry. You pointed me to a page on the line. Are you going to tell me what it is, what language you're relying on? The specific language, yes. Next time you might bring a book with you. It's not that heavy. He argued it diminished per call per day all the way to the end of the week where it is unreasonable then, where it started out being reasonable by the end of the week. It is unreasonable for Agent Meltzer to do that. Who is this speaking? This is trial counsel for Mr. Carey. Okay. It is unreasonable for Agent Meltzer to believe that those calls and that that information was somehow related to the person for whom the wiretap was given, such that it necessitated a necessity showing for the usage of that information. That's exactly what we've been arguing, and I think it's the government's fault. But he doesn't say where. He doesn't point to a point. He doesn't say everything. See, everything up to the point where it becomes unreasonable for them to believe it's the same party is admissible. You've admitted that already. So where does he say, look, this is the point at which the stuff becomes inadmissible? Because then we have to see whether or not the stuff that comes in after that point is, in fact, prejudicial to your client. Well, I think that's for the district court to decide. Well, it's up for you, the district court, to point out. Well, I think the district court's ruling was that you didn't have to make that finding. So what exactly is your position standing here today as to when it became unreasonable for them to believe that and what evidence came in after that point that was submitted against your client? It would have been the moment the agents knew that was not a person related and that they were not talking about. And I can't tell you standing here which conversation it was. Well, you had the conversations. You could have looked at them. And what came in after that? What is the evidence that came in after that point that you're objecting to? Well, because it was the government's burden to prove its admissibility in the courts, under the standard we loosely discussed, if that was the case. The answer is you don't know. That is correct. I don't know. You're standing here on appeal. You're objecting to what the district court did, and you can't tell me what specific evidence was admitted that prejudiced your client. You can't say, look, at this point the wiretap became illegal because at this point they should have known it was no longer the same parties. Then everything after that point is suppressible, and we can look at it. Maybe nothing came in after that point, as far as I know. So what came in after that point? Well, Your Honor's saying came in. This was a guilty plea. This was not a trial. So you're objecting to evidence being used against your client, right? Correct. So what is the evidence? What specific things are you objecting to? Well, that's impossible to tell without knowing precisely where the district court would rule. But that's your burden to tell us where that point is or where you believe it is and then tell us from this point forward the stuff is inadmissible and should not have been used against my client. And even standing here on appeal, you can't tell me what that is. I can't tell you because. . . You have the information. You have all the tapes. You have every piece of evidence that came in. And you fault the district court for not making that finding? I fault the district court for not holding a hearing, but that would be based on a standard the court. . . That was a Frank's hearing. Right, and the court and the parties at that time didn't understand what the correct rule was because. . . Let me make it simple for you. What can you tell me that came in that was used against your client that should not have been? What is the evidence? Give me one piece of evidence that you think. . . Here it is, and here's how it privileges my client's defense. I can't address that. AI was not trial counsel, and so. . . You have the record. We have the record, but this was a guilty plea, and the appeal is based on the legal issue in this case. But you've already admitted standing there that some of the stuff you objected to was in fact admissible. Everything that was said until they realized or should have realized that it was the wrong party on the wiretap is admissible. So you've already admitted that some of that stuff comes in. Now you have to persuade me that the stuff that came in after that made a difference. What is that stuff? What is the evidence that came in after that point that prejudiced your client? Well, because this was a guilty plea, the only way to develop that record would be a petition under 2255. I can't introduce new evidence here, nor could I. . . Well, nobody's asking you to introduce new evidence. You've got the transcript. You know what the evidence that came in. It's up to you to say, look, at this point the evidence becomes illegal. At this point the evidence that comes in has to be suppressed or should have been suppressed. There is no transcript that says that in this case, Your Honor. With the tapes, I think there's good ones. Could I interject a question hoping to clarify this? When the question is what came in afterwards, I know it's not a trial situation because of the plea, but I was under the impression that what you were griping about was that you think or your client thinks that the agents heard something that led them to stop the car when the drugs were on the move. And you think they must have heard that after they should have known that it was a different guy. I think that's. . . So let me rephrase. It may be a different question than Judge Kaczynski was asking, but the question on my mind is what evidence, what statements, not trial evidence, what statements were made on the phone that were picked up in the wiretap that led to the car being stopped that had the drugs that contributed to conviction of your client? And was that stuff that was heard then, what was it? And was it heard after other things were heard that reasonably should have indicated that they were listening to the wrong guy? Well, the record doesn't reflect that. But I can tell you this, that given the timing of it, the stop of the car and the seizure of the evidence happened toward the end, which if Agent Meltzer is correct that it was sometime in that period from the 10th to the 17th when they realized they were listening to the wrong conversation that would have necessarily had to have been before they stopped the car and seized the evidence. But I can't tell you exactly which one because that. . . Well, the government has argued here today that they didn't realize until after the seizure, after the arrest. That's their position. Well, I'm not sure that we have a record that says that. Well, that's what I understood the government to be arguing. That's what I understood what they argued in the brief, and that's what I understood them to be arguing here standing there at the lectern. Well, paragraph 4 on page 98 of the excerpts states that on March 17th, as a result of calls intercepted, a sheriff's deputy stopped a vehicle southbound on Interstate 5, and they found the currency and the two cell phones, and then there was a subsequent search warrant of the Irvine residents. That's the end of the period from the 10th to the 17th. Now, I don't know which of those conversations, but I'm going to guess it was conversations on the 17th. That makes the most sense. The government has argued over and over again that they were acting quickly on information that they received, and the agents were, and that if that's true, then that intercepted conversation would have undoubtedly have occurred on the 17th, which is when you presumably, if they learned in that period of the 10th to the 17th, that they were listening in on things they shouldn't have listened to, then that would have been an illegally intercepted call. Counsel, Judge Gould, if I could interject on that point. I'm not sure how that proves the point you're arguing, that it was on the 17th. Let's say, for example, that on the very first few seconds of the authorized wiretap, the speaker said, we're going to move the drugs in a green Chevrolet down Market Street on the 17th. That's the time when we're delivering the drugs. And then the agents found out after that that it was a different person here that they were listening to. I go back to Judge Kaczynski's opening question. Wouldn't they be able to use that, we're going to move the drugs in the green Chevy, statement in evidence that they'll use it as a basis for stopping the car? I think you're right, but I don't think the record reflects that's what happened. But you haven't proffered any evidence when we're done on that. You haven't said, look, this came in on the 17th, they heard it on the 17th, this was too late at that point, and that should have not been used. That record was not developed for the district court based on the district court's ruling. And you had the record on appeal, you had it, you didn't put it in your brief, you didn't argue that. Well, if it wasn't part of the record for the district court, we couldn't supply the court with additional discovery. I'm sorry, you couldn't have put it in the district court? You couldn't have presented this? It wasn't presented by Mr. Carrier, his attorney, in front of the district court. When I say you, I mean you and your client. No, I understand, but my point is this. You're asking why we haven't brought it up on appeal because it's not in front, wasn't on the record in front of the district court. And so the only remedy to that is either a remand to do that or... An affirmance. Or a petition to rid of Habeas Carpenter, that's right. Okay, thank you. Thank you, Your Honor. The case is argued and will stand submitted.
judges: Kozinski, W. Fletcher, Gould